# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| NORTHWEST CASCADE INC., ) | No. 76475-6-I |
| ) | |
| Appellant, ) | DIVISION ONE |
| ) | |
| v. ) | UNPUBLISHED OPINION |
| ) | |
| WASHINGTON STATE DEPARTMENT ) | |
| OF LABOR AND INDUSTRIES , ) | FILED: March 12, 2018 |
| ) | |
| Respondent. ) | |

APPELWICK, J. —The Board of Industrial Insurance Appeals fined Northwest Cascade for exposing employees to an unsafe ladder. The trial court affirmed. Northwest Cascade contends that the Department did not present a prima facie case of a serious violation. However, the Board's findings reflect substantial evidence of a serious violation. We affirm.

## FACTS

In August 2014, Northwest Cascade Inc. (NWC) was upgrading the storm drainage system for the city of Des Moines. For the project, NWC excavated a trench that, on average, was between five and a half and six feet deep.

David Lundeen, then a safety compliance officer for the Department of Labor and Industries (Department), conducted an inspection of the construction site on August 20, 2014. The Department cited NWC for three Washington Industrial Safety and Health Act of 1973 (WISHA), ch. 49.17 RCW, violations.

NWC appealed to the Board of Industrial Insurance Appeals (Board). The Board vacated two of the violations, but affirmed the third, violation of WAC 296-876-30005(1), which requires employers to keep portable ladders in good, usable condition.

Then, NWC appealed the final order affirming the third violation to King County Superior Court. The court found substantial evidence to uphold the implied finding that the employees were exposed to the ladder hazard. NWC appeals.

## DISCUSSION

NWC argues that the Board erred in finding that it committed a serious violation of WAC 296-876-30005(1). Specifically, it contends that the Department failed to meet its burden in establishing that employees were exposed to the damaged ladder, or that any employee would need to use the ladder after it became damaged at the jobsite.

I.  Standard of Review

This court reviews a decision by the Board directly, based on the record before the agency. Express Constr. Co. v. Dep't of Labor & Indus., 151 Wn. App. 589, 595, 215 P.3d 951 (2009). We review findings of fact to determine whether they are supported by substantial evidence. Id. at 595-96. The findings of fact are conclusive if supported by substantial evidence when viewed in light of the record as a whole. Id.; RCW 49.17.150(1); RCW 34.05.570(3)(e). Substantial evidence is evidence in sufficient quantum to persuade a fair-minded person of the truth of the declared premise. Express Const. Co., 151 Wn. App. at 596.

2

II.   Prima Facie Requirements of a Serious WISHA Violation

The Department cited NWC for a serious violation of WAC 296-876-30005(1), a specific WISHA regulation providing:

> You must keep portable ladders in good, usable condition. Good, usable condition includes, but is not limited to:
>
> (a) Joints between the steps or rungs and the side rails are tight.
>
> (b) Rungs, cleats, or steps are not bent, broken, or missing.
>
> (c) Side rails are not bent, broken, or split.
>
> (d) All bolts and rivets are in place and secure.
>
> (e) Hardware, fittings, and accessories are securely attached and working properly.
>
> (f) Ropes are not frayed or badly worn.
>
> (g) Moveable parts operate freely without binding or excessive play.
>
> (h) Safety feet and other auxiliary equipment are not excessively worn.
>
> (i) Metal components are not corroded.
>
> (j) There are no other faulty or defective components.

A "serious" violation exists

> if there is a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use in such workplace, unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation.

RCW 49.17.180(6).

When the Department charges an employer with a WISHA regulation violation, the Department bears the initial burden of proving the violation occurred.

Pilchuck Contractors, Inc. v. Dep't of Labor & Indus., 170 Wn. App. 514, 518, 286 P.3d 383 (2012). If it charges a "serious" violation of a specific WISHA provision, the Department must prove as part of its prima facie case: (1) the cited standard applies; (2) the requirements of the standard were not met; (3) employees were exposed to, or had access to, the violative condition; (4) the employer knew or, through the exercise of reasonable diligence, could have known of the violative condition; and (5) there is a substantial probability that death or serious physical harm could result from the violative condition. Id.

Out of the five requirements, NWC argues that substantial evidence fails to support only the third—that employees were exposed to or had access to the violative condition, a damaged ladder. It contends that the Department offered no credible evidence that the ladder would be, had been, or was used in its damaged condition.

To determine whether a worker is exposed to a hazard in violation of WISHA, the Department must show that the worker had access to the violative conditions. Mid Mountain Contractors, Inc. v. Dep't of Labor and Indus., 136 Wn. App. 1, 5, 146 P.3d 1212 (2006). To establish employee access, the Department must show by reasonable predictability that, in the course of the workers' duties, employees will be, are, or have been in the zone of danger. Id.

In Mid Mountain Contractors, the Department cited Mid Mountain for exposing employees to a cave-in hazard in a trench at the jobsite. Id. at 3. Mid Mountain argued that the Department failed to show that employees were exposed to the violation, because its employees were working in a portion of the trench that

4

was less than four feet deep and more than five feet away from the zone of danger. Id. at 5. This court rejected Mid Mountain's argument, noting that the proper standard is whether the employees had access to the hazard posed by the unprotected south wall that was subject to cave-in. Id. at 6. We found,

> Vern McCollaum, a Mid Mountain employee present the day of the citation, had access to the hazard, and it was within his normal duties to have access to this area. . . . Although McCollaum was not actually within the zone of danger, he was working within close proximity, and it is reasonably likely that he could have walked the short distance and been within the zone of danger. There was nothing to prevent entering the zone during the conduct of his normal duties.

Id. at 7. We concluded that Mid Mountain violated the WISHA standards and affirmed the decision and order. Id. at 7-8.

Here, NWC contends that there is no evidence that employees used the damaged ladder, nor any evidence that employees intended to use it. But, as in Mid Mountain Contractors, the proper standard is whether employees had access to the hazard posed by the damaged ladder. When the hazard is equipment, there must be evidence that it is located where employees could gain access to it and use it in the course of their normal duties. See Adkins v. Aluminum Co. of Am., 110 Wn.2d 128, 147-48, 750 P.2d 1257, 756 P.2d 142 (1988) (applying the standard from the federal counterpart to WISHA and finding that a roofer was not exposed to an unguarded machine beyond his work area).

During his inspection, Lundeen observed a ladder next to the trench. Lundeen testified that it was a twelve foot ladder that was part of an extension ladder, with the other part of the ladder missing. The ladder had bent rails, making it unsafe to use and a violation of WAC 296-876-30005(1)(c). Lundeen did not see

any other ladders at the jobsite. Lundeen testified that, after speaking with the foreman, he understood that the crew had used the ladder.

The site foreman, James Hernandez, first testified that he did not remember what he told Lundeen about the damaged ladder. Hernandez then testified that he did not see anyone use the damaged ladder, and that he did not tell Lundeen that anyone had used it. Hernandez testified that workers could use a ladder to get in and out of the kind of trench box that was at the NWC jobsite. But, he stated that he probably would not have used the ladder to get in and out of this particular trench box, because there was a ramp to get out of the back of the trench. Hernandez explained that to use the ladder, first the ladder would go in the trench, then the worker would use it to go down, then the ladder would have to come out, to facilitate bringing in the pipe.

Robert Solis, a laborer working at the NWC site on the day of the inspection, testified that he was the only one in the trench that day. Solis also testified that there was no need for using a ladder that day. Solis described how he exited the trench using the ramp, but did not testify how he entered the trench.

As in Mid Mountain Contractors, Solis, the NWC employee present on the day of the citation, had access to the hazard, and it was within his normal duties to use the ladder. Although Lundeen did not see the damaged ladder inside the trench box, it was within close proximity. And, Hernandez testified that, when using the ladder, workers would have to take the ladder out of the trench box to bring in the pipe. It is reasonably likely that the workers could have used the damaged ladder to enter the trench box. The Board made a reasonable inference that NWC

6

exposed workers to the unsafe ladder. Therefore, NWC violated the WISHA safety standards.

Further, in its decision affirming the Board, the trial court found that there was a clear implication in the testimony from Hernandez and Solis that there were occasions when workers used a ladder in the course of this project. It stated,

> Because the ladder was the only ladder on site, and because the job at times involved (and even required per Mr. Hernandez) use of a ladder, it is reasonably predictable that, in the course of their duties, [NWC] employees would use the defective ladder and, therefore, were exposed to the hazard in violation of WISHA.

We agree with the trial court's reasoning.

We affirm the decision and order.

_Appelwick, J._

WE CONCUR: